UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 24-2728-KK-SPx** | Date: | July 17, 2025 |
|---|---|---|---|
| Title: | *Woodstream Corporation et al. v. Natanya Nacole Matier* | | |

Present: The Honorable   KENLY KIYA KATO, UNITED STATES DISTRICT JUDGE

| Noe Ponce | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **(In Chambers) Order GRANTING Plaintiffs' Motion for Default Judgment [Dkt. 21]**

## I.
## INTRODUCTION

On December 27, 2024, plaintiffs Woodstream Corporation ("Woodstream"), Safer Inc ("Safer"), and Dynamic Solutions Worldwide, LLC ("Dynamic") (collectively, "Plaintiffs") filed the operative Complaint against defendant Natanya Nacole Matier ("Defendant"), asserting claims arising from Defendant's alleged infringement of Plaintiffs' trademark, patent, and copyright. ECF Docket No. ("Dkt.") 1, Complaint ("Compl."). Defendant has not made an appearance in this matter. Hence, on May 13, 2025, following the entry of default by the Clerk of the Court, dkt. 17, Plaintiffs filed the instant Motion for Default Judgment ("Motion"). Dkt. 21, Motion ("Mot.").

The Court finds this matter appropriate for resolution without oral argument. See Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons set forth below, Plaintiffs' Motion is **GRANTED**.

## II.
## BACKGROUND

### A.   PROCEDURAL HISTORY

On December 27, 2024, Plaintiffs filed a Complaint against Defendant asserting claims for trademark infringement and unfair competition under the Lanham Act, patent infringement under the Patent Act, and copyright infringement under the Copyright Act. Compl. The claims arise from

Defendant's alleged sale of counterfeit reproductions of Plaintiffs' goods ("Counterfeit Goods") through Amazon, which infringe on Plaintiffs' patent, trademark, and copyright. Id.

On March 4, 2025, Defendant was served with the summons and Complaint. Dkt. 14.

Defendant failed to answer or otherwise appear. Hence, on April 10, 2025, Plaintiff filed a request for entry of default. Dkt. 16. On April 14, 2025, the Clerk of Court entered default against Defendant pursuant to Federal Rule of Civil Procedure 55(a). Dkt. 17.

On May 13, 2025, Plaintiffs filed the instant Motion pursuant to Federal Rule of Civil Procedure 55(b). Mot. In support of the Motion, Plaintiffs include the declarations of Paul McQuillan, the Senior Vice President of Engineering for plaintiff Woodstream Corporation, dkt. 21-2, Declaration of Paul McQuillan ("McQuillan Decl."), and Michael Gibson, counsel for Plaintiffs, dkt. 21-3, Declaration of Michael Gibson ("Gibson Decl."). On July 9, 2025, Plaintiffs filed the supplemental declaration of Michael Gibson. Dkt. 31.

As of the date of this Order, Defendant has not filed an Opposition to the Motion.

This matter, thus, stands submitted.

**B.    RELEVANT FACTS**

As alleged in the Complaint, Defendant owns EnjoyBars, an Amazon storefront whose principal place of business is in Ontario, California. Compl. ¶¶ 9-10. Plaintiff Woodstream is a Pennsylvania corporation that wholly owns plaintiffs Safer and Dynamic. Id. ¶¶ 6-8.

Since April 2, 2024, plaintiff Safer has owned United States Trademark Registration No. 7,348,455 for the Safer Mark ("Asserted Trademark"). Id. ¶ 12. Plaintiff Safer has used the Asserted Trademark since January 8, 2024 "in connection with the manufacture, distribution, provision, offering for sale, sale, marketing, advertising, and promotion of insect repellents, traps, and refills." Id. ¶ 13. Through EnjoyBars, Defendant used commerce designations "identical to and substantially indistinguishable" from the Asserted Trademark on goods Defendant advertised, imported, and sold. Id. ¶¶ 23-24. Plaintiff Woodstream purchased the goods and, upon inspection, "confirmed that the Counterfeit Goods are a counterfeit reproduction of its Goods sold under the [Asserted Trademark]." Id. ¶¶ 25-26. Plaintiff Woodstream further confirmed the Counterfeit Goods were "inferior in quality" to Plaintiffs' goods. Id. ¶ 27.

Since October 18, 2022, plaintiff Dynamic has owned United States Patent No. 11,470,832 for a "Plug-In Insect Trap With Replaceable Adhesive Card" ("Asserted Patent"). Id. ¶ 31. Defendant offered "Fly Trap Refill Packs, SH503, SH 506, and SH512 that embody or use the inventions claimed in the [Asserted Patent]." Id. ¶ 35. Plaintiffs purchased the goods and "determined that they literally infringe at least one claim of the" Asserted Patent. Id. ¶ 36.

Since February 27, 2024, plaintiff Woodstream has owned United States Copyright Registration No. VA 2-385-220 for the Safer Home Glue Card Design ("Asserted Copyright"), which was first designed by plaintiff Woodstream's employees on or around November 21, 2021. Id. ¶¶ 37-40. "Defendant has sold identical copies of the [Asserted Copyright]" through EnjoyBars

without plaintiff Woodstream's "authorization, consent, or knowledge, and without any compensation" to Plaintiffs.  Id. ¶¶ 43-44.

On November 19, 2024, Plaintiffs sent a cease-and-desist letter to Defendant and also requested Amazon take down the unauthorized activity.  Id. ¶¶ 46-47.  At the time Plaintiffs filed the Complaint, Defendant had not yet responded to the cease-and-desist letter, but Amazon had temporarily taken down the unauthorized activity "for a limited 10 day period."  Id. ¶ 48.  Defendant has, however, "responded to Amazon with counter notices", and Plaintiffs "ha[ve] no evidence that Defendant will comply with the demands set out in its cease and desist letter after the temporary takedown."  Id. ¶¶ 9, 48.

## III.
## LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes a court to enter default judgment against a party who has failed to plead or otherwise defend.  Fed. R. Civ. P. 55(b)(2).  The decision to grant or deny an application for default judgment is discretionary.  Allstate Life Ins. Co. v. Markowitz, 590 F. Supp. 3d 1210, 1215 (C.D. Cal. 2022) (citing Aldabe v. Aldabe, 616 F.2d 1089, 1092-93 (9th Cir. 1980)).

In determining whether to enter default judgment against a party, a court considers the following factors: (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claims, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  Eitel v. McCool, 782 F.2d 1470, 1471-72 (9th Cir. 1986).

Upon entry of default against a defendant, the court takes "'the well-pleaded factual allegations' in the complaint 'as true.'"  DIRECTV, Inc. v. Huynh, 503 F.3d 847, 854 (9th Cir. 2007) (quoting Cripps v. Life Ins. Co., 980 F.2d 1261, 1267 (9th Cir. 1992)).  However, "a 'defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.'"  Id. (quoting Nishimatsu Constr. Co. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975)).  "[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default."  Cripps, 980 F.2d at 1267 (citing Danning v. Lavine, 572 F.2d 1386, 1388 (9th Cir. 1978)).  In addition, allegations as to the amount of damages must be proven.  TeleVideo Sys., Inc. v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987).

Finally, pursuant to Local Rule 55-1, an application for default judgment must be accompanied by a declaration setting forth: when, and against what party, default was entered; the pleading to which default was entered; whether the defaulting party is an infant or incompetent person; that the Servicemembers Civil Relief Act, 50 U.S.C. App. § 521, does not apply; and that notice has been served on the defaulting party, if required.  L.R. 55-1.  The party applying for default judgment must also provide the defaulting party with notice of the application if the defaulting party has appeared in the action or the applicant seeks unliquidated damages.  Fed. R. Civ. P. 55(b)(2); L.R. 55-2.

///

## IV.
## DISCUSSION

### A.   THE MOTION SATISFIES THE APPLICABLE PROCEDURAL REQUIREMENTS

As an initial matter, the instant Motion satisfies the procedural requirements set forth in the Federal Rules of Civil Procedure and the Court's Local Civil Rules. Plaintiffs submitted two declarations and a proof of service that complies with Local Rule 55-1. See Gibson Decl.; dkt. 21-4. Specifically, the declarations state (1) default was entered against Defendant on April 14, 2025, (2) default was entered for failing to respond to Plaintiffs' Complaint, (3) Defendant is not infant or incompetent person, and (4) Defendant is not officer or agent of any state or in the military service under the Servicemembers Civil Relief Act. Gibson Decl., ¶¶ 2-7; dkt. 31. Plaintiffs served the Motion on Defendant on May 13, 2025. Dkt. 21-4.

### B.   THE EITEL FACTORS WEIGH IN FAVOR OF GRANTING DEFAULT JUDGMENT AGAINST DEFENDANT

In addition, as discussed below, the Eitel factors weigh in favor of granting default judgment against Defendant.

#### 1.   Possibility of Prejudice to Plaintiffs

The first Eitel factor is "whether the plaintiff will suffer prejudice if default judgment is not entered." PepsiCo, Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Here, in light of Defendant's failure to appear, Plaintiffs "will likely be without other recourse for recovery." See id.; see also Amini Innovation Corp. v. KTY Int'l Mktg., 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) (finding prejudice to plaintiff favored entering default judgment because, "[i]f the Court does not enter a default judgment, it will allow [the defendant] to avoid liability by not responding to [the plaintiff's] claims").

Accordingly, the Court finds the first Eitel factor weighs in favor of entering default judgment.

#### 2.   Merits of Plaintiffs' Claims and Sufficiency of the Complaint

The second and third Eitel factors are "the merits of [the plaintiff's] substantive claim" and "the sufficiency of the [claim]." PepsiCo, Inc., 238 F. Supp. 2d at 1175. These factors, which "are often analyzed together," Dr. JKL Ltd. v. HPC IT Educ. Ctr., 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010), require a plaintiff to "state a claim on which the [plaintiff] may recover," PepsiCo, Inc., 238 F. Supp. 2d at 1175. A claim "satisfies this test when the claims 'cross the line from conceivable to plausible.'" Indian Hills Holdings, LLC v. Frye, 572 F. Supp. 3d 872, 886 (S.D. Cal. 2021) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 680 (2009)). In performing this analysis, courts take "the well-pleaded factual allegations in the [claim] as true." DIRECTV, Inc., 503 F.3d at 854 (internal quotation marks omitted).

Here, as discussed below, the allegations in the Complaint are sufficient to state a claim for each asserted cause of action. Compl. at 9-13.

  a. **Causes of Action One and Two: Trademark Infringement and Unfair Competition in violation of the Lanham Act**

  To state a claim for trademark infringement under the Lanham Act, 15 U.S.C. § 1114, a plaintiff must allege: (1) "it has a protectible ownership interest in the mark," and (2) "defendant's use of the mark is likely to cause consumer confusion." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1144 (9th Cir. 2011) (quoting Dep't of Parks & Recreation for State of California v. Bazaar Del Mundo Inc., 448 F.3d 1118, 1124 (9th Cir. 2006)). "Factors relevant to determining likelihood of confusion include: the strength of the mark, proximity of the goods, similarity of the marks, evidence of actual confusion, marketing channels used, type of goods and the degree of care likely to be exercised by the purchaser, defendant's intent in selecting the mark, and likelihood of expansion of the product lines." ACI Int'l Inc. v. Adidas-Salomon AG, 359 F. Supp. 2d 918, 921 (C.D. Cal. 2005).

  Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), provides a cause of action for unfair competition where defendant's "conduct has created a likelihood of confusion" for consumers. Wendt v. Host Int'l, Inc., 50 F.3d 18 (9th Cir. 1995). "The ultimate test for unfair competition is exactly the same as for trademark infringement[.]" Century 21 Real Est. Corp. v. Sandlin, 846 F.2d 1175, 1178 (9th Cir. 1988) (internal quotation marks omitted). "The courts have uniformly held that common law and statutory trade-mark infringements are merely specific aspects of unfair competition." New West Corp. v. NYM Co. of Cal., Inc., 595 F.2d 1194, 1201 (9th Cir. 1979).

  Here, Plaintiffs sufficiently state claims for trademark infringement and unfair competition in violation of the Lanham Act. Plaintiff Safer has owned the Asserted Trademark since April 2, 2024. Compl. ¶ 12. Defendant used commerce designations "identical to and substantially indistinguishable" from the Asserted Trademark on goods Defendant advertised, imported, and sold through EnjoyBars on Amazon. Id. ¶¶ 23-24. Indeed, Plaintiffs confirmed Defendant's goods used a counterfeit marking indistinguishable from the Asserted Trademark. Id. ¶¶ 25-26. Hence, Defendant's use of the counterfeited markings constitutes trademark infringement and unfair competition. Microsoft Corp. v. Buy More, Inc., 136 F. Supp. 3d 1148, 1157 (C.D. Cal. 2015), aff'd, 703 F. App'x 476 (9th Cir. 2017) (finding "counterfeit marks are inherently confusing") (quoting Phillip Morris USA Inc. v. Shalabi, 352 F. Supp. 2d 1067, 1073 (C.D. Cal. 2004)).

  Thus, for Causes of Action One and Two, Plaintiffs sufficiently allege trademark infringement and unfair competition.

  b. **Cause of Action Three: Direct Patent Infringement in violation of 35 U.S.C. § 271(a)**

  To state a claim for direct patent infringement in violation of the Patent Act, 35 U.S.C. § 271(a), a plaintiff "must allege that defendant, without authority, makes, uses, offers to sell, sells, or imports any patented invention within the United States during the term of the patent." Windy City Innovations, LLC v. Microsoft Corp., 193 F. Supp. 3d 1109, 1113 (N.D. Cal. 2016) (citing 35 U.S.C. § 271(a)).

  Here, plaintiff Dynamic has owned the Asserted Patent since October 18, 2022. Compl. ¶ 31. Plaintiffs allege Defendant offered "Fly Trap Refill Packs, SH503, SH 506, and SH512 that

embody or use the inventions claimed in the [Asserted Patent]." Id. ¶ 35.  Indeed, Plaintiffs allege Defendant's goods "literally infringe at least one claim of the [Asserted Patent]." Id. ¶ 36.  Plaintiffs further allege Defendant sold goods making use of the Asserted Patent "without any authority or approval" from Plaintiffs.  Id. ¶ 64.  Moreover, Plaintiffs attach a copy of the patent to highlight the similarities between the alleged product and the Asserted Patent.  Id., Ex. E.  Hence, Defendant has offered and sold goods that directly infringe on the Asserted Patent.  SATA GmbH & Co. KG v. Qingdao Hanspray New Material Tech. Co., 696 F. Supp. 3d 954, 959 (D. Nev. 2023) (denying dismissal where the plaintiff "identified features shared by both" the accused products and the asserted patent).

Thus, for Cause of Action Three, Plaintiffs sufficiently allege direct patent infringement.

### c. Cause of Action Four: Copyright Infringement in violation of 17 U.S.C. § 501

To state a claim for copyright infringement in violation of the Copyright Act, 17 U.S.C. § 501, Plaintiff must allege (1) ownership of a valid copyright and (2) copying of constituent, original elements of the work.  Simple Design Ltd. v. Enerjoy Ltd., 710 F. Supp. 3d 817, 824 (C.D. Cal. 2024) (citing Skidmore v. Led Zeppelin, 952 F.3d 1051, 1064 (9th Cir. 2020) (en banc)).  "To prove the second prong, a plaintiff must either show (1) direct evidence of copying, or (2) prove copying circumstantially by showing that the defendant had access to the plaintiff's work and that the two works share similarities probative of copying." Id.

Here, plaintiff Woodstream has owned the Asserted Copyright since February 27, 2024, and it was first designed by plaintiff Woodstream's employees on or around November 21, 2021.  Compl. ¶¶ 37-40.  Plaintiffs allege "Defendant has sold identical copies of the [Asserted Copyright]" through EnjoyBars without plaintiff Woodstream's "authorization, consent, or knowledge, and without any compensation" to Plaintiffs.  Id. ¶¶ 43-44.  Moreover, Plaintiffs' products were available for purchase and widely distributed.  Id. ¶¶ 17-19.  Hence, Defendant's use of the exact design of the widely available Asserted Copyright constitutes copyright infringement.  Simple Design Ltd., 710 F. Supp. 3d at 824 (finding circumstantial evidence of copying where "Defendant had access to Plaintiff's copyrighted material" and the infringing material was "remarkably similar").

Thus, for Cause of Action Four, Plaintiffs sufficiently allege copyright infringement.

\* \* \*

Accordingly, the Court finds the second and third Eitel factors weigh in favor of entering default judgment.

### 3. Sum of Money at Stake

The fourth Eitel factor is "the amount of money at stake in relation to the seriousness of [the defendant's] conduct."  PepsiCo. Inc., 238 F. Supp. 2d at 1176-77.  The court must "assess whether the recovery sought is proportional to the harm caused by" the defendant.  Landstar Ranger, Inc. v. Parth Enters., Inc., 725 F. Supp. 2d 916, 921 (C.D. Cal. 2010).

Here, each of the Plaintiffs seeks monetary and statutory damages, as well as injunctive relief, attorneys' fees, and costs.  Mot. at 2.  As discussed below in Section IV.C., the Court grants in part and denies in part Plaintiffs' requested relief.  The Court finds the amount of money at stake is proportional and tailored to the harm caused by Defendant.

Accordingly, the Court finds the fourth Eitel factor weighs in favor of entering default judgment.

### 4. Possibility of Dispute Concerning Material Facts

The fifth Eitel factor is "the possibility of dispute as to any material facts in the case." PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, because default has been entered against Defendant, see dkt. 16, the Court takes "the well-pleaded factual allegations in the [Complaint] as true[,]" see DIRECTV, Inc., 503 F.3d at 854 (internal quotation marks omitted), except insofar as they pertain to the amount of Plaintiffs' damages, see TeleVideo Sys., Inc., 826 F.2d at 917-18.  Hence, no genuine dispute of material facts would preclude entry of default judgment.  See PepsiCo, Inc., 238 F. Supp. 2d at 1177 (concluding no genuine dispute of material facts would preclude entry of default judgment because, "[u]pon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages").

Accordingly, the Court finds the fifth Eitel factor weighs in favor of entering default judgment.

### 5. Excusable Neglect

The sixth Eitel factor is "the possibility that the default resulted from excusable neglect." PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, Defendant was served with the summons and Complaint on March 4, 2025.  Dkt. 14.  Plaintiffs also served Defendant with the instant Motion and all related papers on May 13, 2025.  Dkt. 21-4.  Nevertheless, Defendant failed to answer, file an opposition to the instant Motion, or otherwise appear.  The Court, therefore, finds it unlikely that Defendant's default resulted from excusable neglect.  See Shanghai Automation Instrument Co. v. Kuei, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding default could not "be attributed to excusable neglect" where defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

Accordingly, the Court finds the sixth Eitel factor weighs in favor of entering default judgment.

### 6. Strong Policy Favoring Decisions on the Merits

The seventh Eitel factor is the strong policy favoring decisions on the merits.  See Eitel, 782 F.2d at 1472.  While the policy favoring decisions on the merits "always weighs against default judgment," Amini Innovation Corp., 768 F. Supp. 2d at 1056, this factor, "standing alone, is not dispositive." PepsiCo, Inc., 238 F. Supp. 2d at 1177.  Here, Defendant's apparent unwillingness to participate in this aspect of the litigation "makes a decision on the merits impractical, if not impossible."  See id.  Thus, the policy favoring decisions on the merits does not preclude entering default judgment.  See id.; see also Wecosign, Inc. v. IFG Holdings, Inc., 845 F. Supp. 2d 1072, 1083

(C.D. Cal. 2012) (finding default judgment appropriate when "a decision on the merits is impossible").

* * *

Accordingly, the Eitel factors strongly weigh in favor of default judgment on Plaintiffs' claims. Therefore, the Court finds default judgment against Defendant is appropriate.

**C.   PLAINTIFFS' REQUESTED RELIEF**

In seeking default judgment, the moving party "has the burden of proving damages through testimony or written affidavit." Bd. of Trs. of the Boilermaker Vacation Tr. v. Skelly, Inc., 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005). Default judgment may be entered without a hearing if the amount claimed is "capable of mathematical calculation." Davis v. Fendler, 650 F.2d 1154, 1161 (9th Cir. 1981) (citation omitted).

Here, plaintiff Safer seeks $375,000 in statutory damages and $11,100 in attorneys' fees and costs. Dkt. 21 at 2. Plaintiff Dynamic seeks $113,230 in lost profits, based on a net profit of 30% on Defendant's gross revenue from sales of Counterfeit Goods totaling $377,434.00, and $5,864.60 in attorneys' fees. Id. Plaintiff Woodstream seeks $30,000 in statutory damages and $2,399.99 in attorney's fees. Id. Plaintiffs also seek a permanent injunction against Defendant. Id. As discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' requested relief.

**1.   Statutory Damages**

Generally, "the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima." Peer Int'l Corp. v. Pausa Recs., Inc., 909 F.2d 1332, 1336 (9th Cir. 1990); see also Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 993 (9th Cir. 2009).

For violations of the Lanham Act, a "plaintiff may elect . . . to recover, instead of actual damages and profits, . . . not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just" or "if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 17 U.S.C. § 1117(c). An allegation of willful trademark infringement is "deemed true" upon entry of default. Derek Andrew, Inc. v. Poof Apparel Corp., 528 F.3d 696, 702 (9th Cir. 2008). For violations of the Copyright Act, a plaintiff "may elect . . . to recover, instead of actual damages and profits, an award of statutory damages . . . in a sum of not less than $750 or more than $30,000 as the court considers just" or if the infringement is willful, "the court in its discretion may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c).

Here, plaintiff Safer seeks $375,000, representing $75,000 for each of the five types of Counterfeit Goods sold by the Defendant. Mot. at 10-11. Plaintiff Woodstream seeks $30,000. Id. at 12. Both amounts are within the statutory ranges set forth in the Lanham Act and Copyright Act. Hence, given Defendant's infringement of the Asserted Trademark and Asserted Copyright, the Court finds Plaintiffs' requests for statutory damages, which are both consistent with the Lanham Act and the Copyright Act, to be reasonable and just.

Accordingly, plaintiffs Safer and Woodstream's requests for statutory damages is **GRANTED**.

### 2.      Lost Profits Damages Relief

Section 284 of the Patent Act provides: "[u]pon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.  To obtain a lost profits award, a plaintiff must provide "(1) a showing that the patent owner would have made the sale but for the infringement, i.e., causation existed, and (2) proper evidence of the computation on the lost profits."  Scripto-Tokai Corp. v. Gillette Co., 788 F. Supp. 439, 444 (C.D. Cal. 1992) (citing Panduit Corp. v. Stahlin Bros. Fibre Works, 575 F.2d 1152, 1156 (6th Cir. 1978)).  One way to make this showing is by proving the Panduit factors: "(1) a demand for the patented product, (2) an absence of acceptable noninfringing substitutes, (3) the marketing and manufacturing capability to exploit demand, and (4) the amount of profit the patentee would have made but for the infringement."  Id.; see also Rite-Hite Corp. v. Kelley Co., 56 F.3d 1538, 1545 (Fed. Cir. 1995).

Here, plaintiff Dynamic seeks $113,230 based on gross sales of Counterfeit Goods in the amount of $377,434.00 and an estimated profit margin of 30%.  Mot. at 18.  To calculate this number, Plaintiffs "researched the volume of Defendant's sales by using ecommerce analytics and intelligence solutions . . . to assess the sales performance of the Defendants' Counterfeit Goods."  McQuillan Decl., ¶ 8.  Assuming a conservative 30% profit margin on an estimated $377,434.00 in sales of the five different products, plaintiff Dynamic now seeks $113,230.  Id. ¶ 11.  However, plaintiff Dynamic does not analyze any of the relevant Paduit factors and fails to provide any evidence or argument that plaintiff Dynamic would have made the sale but for the infringement.  Thus, plaintiff Dynamic fails to meet its burden of establishing entitlement to an award of lost profits.[1]  See Laltitude LLC v. Shenzhen Jinnuo Precision Prods. Co., No. CV 21-9089-GW-MARx, 2023 WL 2796502, at *7 (C.D. Cal. Mar. 1, 2023) (denying lost profits damages where the plaintiff "neither reference[d] nor analyze[d] [the Panduit] factors in support of its request for purported lost profits").

Accordingly, plaintiff Dynamic's request for lost profits damages is **DENIED**.

### 3.      Permanent Injunctive Relief

The Lanham Act authorizes courts to issue permanent injunctions "to prevent the violation of any right of the registrant of a mark registered" with the Patent and Trademark Office.  15 U.S.C. § 1116(a).  The Patent Act authorizes courts to issue permanent injunctions to "prevent the violation of any right secured by patent[.]"  35 U.S.C. § 283.  In addition, the Copyright Act authorizes courts to issue permanent injunctions to "prevent or restrain infringement of a copyright."  17 U.S.C. § 502(a).  A plaintiff seeking a permanent injunction must demonstrate: (1) that it has suffered an

---

[1] The Court notes plaintiff Dynamic does not make any argument or provide any evidence regarding "reasonable royalty," and hence, the Court need not consider an award for a reasonable royalty.  35 U.S.C. § 284

irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.  eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006).

Here, the Court finds a permanent injunction is warranted.  First, Plaintiffs have sufficiently alleged they suffered irreparable harm.  Under the Lanham Act, a plaintiff whose trademark is infringed is entitled to a rebuttable presumption of irreparable harm.  15 U.S.C. § 1116(a).  Moreover, Plaintiffs have alleged, among other things, Defendant offers and sells an inferior product or identical product while infringing on Plaintiffs' Asserted Patent and Asserted Copyright.  Compl. ¶¶ 27, 36, 45.  Second, monetary damages are inadequate to compensate for this harm, particularly given the reputational damage and Defendant's failure to appear in the case, which offers no assurance Defendant will cease the misconduct.  Third, the balance of hardships favors Plaintiffs because the injunction would merely prohibit Defendant from continuing to infringe upon the Asserted Trademark, the Asserted Patent, and the Asserted Copyright.  Lastly, the public interest strongly supports injunctive relief, as "the public receives a benefit when the legitimate rights of copyright holders are vindicated."  Netdragon Websoft, Inc. v. Toft, No. CV111037GHKPLAX, 2012 WL 13008123, at *5 (C.D. Cal. Apr. 24, 2012) (citation omitted); Alpargatas USA, Inc. v. Flopstore LLC, No. CV 21-6063-GW-PVCx, 2022 WL 1843134, at *6 (C.D. Cal. Mar. 25, 2022), adopted, No. CV 21-6063-GW-PVCx, 2022 WL 2150656 (C.D. Cal. Mar. 28, 2022) (noting the "strong public policy favoring the protection of trademark rights").  Thus, Plaintiffs are entitled to injunctive relief.  See id.

Accordingly, Plaintiffs' requests for permanent injunctions are **GRANTED**.

### 4. Attorneys' Fees and Costs

#### a. Plaintiff Safer is entitled to attorneys' fees pursuant to the Lanham Act

For trademark infringement cases, the Lanham Act provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."  15 U.S.C. § 1117(a).  However, for *willful* trademark infringement cases, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee[.]"  15 U.S.C. § 1117(b).

Here, plaintiff Safer calculates its attorneys' fees using the schedule in Local Rule 55-3 and seeks $11,100 in attorneys' fees.  Mot. at 18.  Local Rule 55-3 establishes a schedule for calculating reasonable attorneys' fees upon entry of default judgment based on the amount of the judgment. L.R. 55-3.  For judgments over $100,000, the fees shall be $5,600 plus 2% of the amount over $100,000.  Id.  Based on the above, the Court finds plaintiff Safer is entitled to $375,000 for Defendant's violations of the Lanham Act.  Accordingly, pursuant to the schedule set forth in Local Rule 55-3, plaintiff Safer is entitled to $11,100 in attorneys' fees ($5,600 plus 2% of the amount over $100,000).[2]

---

[2] Local Rule 54-1 states, "[t]he 'prevailing party' entitled to costs under Federal Rule of Civil Procedure 54(d) is the party in whose favor judgment is entered, unless otherwise determined by the Court."  Here, Plaintiffs do not seek or identify any costs.  See Mot.

      **b.**      **Plaintiff Dynamic is not entitled to attorneys' fees pursuant to the Patent Act**

For patent infringement cases, the Patent Act provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. "An 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." Octane Fitness, LLC v. ICON Health & Fitness, Inc., 572 U.S. 545, 554 (2014).

Here, plaintiff Dynamic calculates its attorneys' fees using the schedule in Local Rule 55-3 and seeks $5,864.60 in attorneys' fees. Mot. at 18. Based on the above, the Court finds plaintiff Dynamic is not entitled to damages for lost profits. Moreover, the Court does not find the instant infringement to be exceptional. See, e.g., LF Centennial Ltd. v. Inovex Furnishings Corp., No. CV 17-05824-AB-MRWx, 2019 WL 6655258, at *8 (C.D. Cal. Oct. 2, 2019) (denying attorneys' fees where, when "[c]onsidering the totality of the circumstances, including Defendant's initial participation, withdrawal of Defendant's counsel, and Defendant's failure to secure new counsel," plaintiff failed to show the matter was exceptional). Accordingly, plaintiff Dynamic is not entitled to attorneys' fees.

      **c.**      **Plaintiff Woodstream is entitled to attorneys' fees pursuant to the Copyright Act**

For copyright infringement cases, the Copyright Act allows recovery of reasonable attorneys' fees and costs for the prevailing party. 17 U.S.C. § 505.

Here, plaintiff Woodstream calculates its attorneys' fees using the schedule in Local Rule 55-3 and seeks $2,399.99 in attorneys' fees. Mot. at 19. Local Rule 55-3 establishes a schedule for calculating reasonable attorneys' fees upon entry of default judgment based on the amount of the judgment. L.R. 55-3. For judgments between $10,000.01 and $50,000, the fees shall be $1,200 plus 6% of the amount over $10,000. Id. Based on the above, the Court finds plaintiff Woodstream is entitled to $30,000 for Defendant's violation of the Copyright Act. Accordingly, pursuant to the schedule set forth in Local Rule 55-3, plaintiff Woodstream is entitled to $2,399.99 in attorneys' fees ($1,200 plus 6% of the amount over $10,000).

## V.
## CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Default Judgment is **GRANTED**. Plaintiff's requested relief, however, is **GRANTED IN PART** and **DENIED IN PART**. The Court, therefore, **ORDERS** judgment to be entered (1) in favor of plaintiff Safer against Defendant in the amount of $386,100 and (2) in favor of plaintiff Woodstream against Defendant in the amount of $32,399.99. Additionally, Defendant is enjoined from further infringement on the Asserted Trademark, the Asserted Patent, and the Asserted Copyright.

    **IT IS SO ORDERED**.